2023 IL App (1st) 231838
No. 1-23-1838B
Opinion filed December 15, 2023

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 23400521701 |
| ASIA BATTLE, | ) | The Honorable John W. Wilson, Judge, presiding. |
| Defendant-Appellant. | ) | |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices C.A. Walker and Tailor concurred in the judgment and opinion.

.

**OPINION**

¶ 1       The relevance of a proffer's details matters. The trial court may rely on a proffer to detain someone without bail before trial. The State's proffer showed Asia Battle spent months on social media impersonating another person to lure the complainant, who Battle knew, to a place where Battle and her girlfriend, the codefendant, beat the complainant and stole her car in front of codefendant's child.

¶ 2       Battle contradicted none of this in her proffer but identified a possible motive: police had refused Battle and the codefendant's attempt months earlier to file a police report against the

complainant. The trial court properly considered these proffers before granting the State's petition to detain Battle as a real and present threat to the complainant. Likewise, by following the procedure in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act), the trial court provided Battle with a fair hearing. We affirm.

¶ 3                                        BACKGROUND

¶ 4      The State petitioned to detain Battle before her trial for robbery (720 ILCS 5/18-1(a) (West 2022)), aggravated vehicular hijacking (720 ILCS 5/18-4(a)(3) (West 2022)), and aggravated battery in a public place (720 ILCS 5/12-3.05(c) (West 2022)). The State alleged Battle posed "a real and present threat to the safety" to the complainant, who Battle and codefendant, Battle's girlfriend, allegedly "tricked" into driving to a place where they beat her and stole her car. The State's allegations appeared in a verified petition, a copy counsel for Battle confirmed having before announcing ready for the hearing.

¶ 5      The hearing began with the State's proffer, which identified five sources of information: (i) the complainant, (ii) the arresting police officers, (iii) an eyewitness to the alleged battery, (iv) Battle's postarrest statements, and (v) a police department report in which complainant previously reported Battle and codefendant.

¶ 6      The State alleged that the complainant believed for three months that she had been chatting on social media with a childhood friend and had made plans to meet at a park to "smoke and vent." The complainant did not know she had been chatting with Battle. (Battle admitted to police that she had "used someone else's account that she had access to in order to communicate.")

¶ 7    In addition, the complainant arrived at the meeting spot and drove around looking for her friend as Battle sent her directions. A bit later, having still not seen her friend, the complainant felt "uneasy" and heard footsteps behind her. Suddenly, Battle and codefendant allegedly dragged the complainant by her hair to the ground, beating and choking her while she screamed for help. The complainant briefly blacked out, and when she awoke, Battle began striking her in the head with a branch. Battle stopped when strangers intervened. The complainant saw Battle drive off in the complainant's car and codefendant run away. (Battle admitted to police she took complainant's car.)

¶ 8    Within 10 minutes, police arrested Battle in the complainant's car and codefendant with her four-year-old son in a rental car. An eyewitness stated that, before the attack, he had seen codefendant and her child hiding in a bush not far from Battle and thought they might be playing hide and seek. Minutes later, he heard yelling, saw the complainant screaming, and intervened. He saw Battle drive off soon after the attack. He and others chased after codefendant and her son in a failed attempt to stop them from getting away.

¶ 9    The complainant believed Battle and codefendant attacked her for having reported them to the police for disseminating a private sexual video of her without consent. (She described a daylong drugging at Battle and codefendant's home where complainant ultimately refused their offer to be in a "polyamorous relationship.") A police department confirmed that the complainant had reported the video's dissemination.

¶ 10    Battle's proffer did not contradict these alleged events. (Counsel stated that she had yet to see records of the social media messages.) But Battle added facts about her relationship to the complainant. "[F]or whatever reason," police did not "listen to [Battle and codefendant's prior] claims about what [complainant] had done to them."

¶ 11    Battle also noted that she was a 20-year-old mother of one. She did not have custody of her three-year-old daughter, but she visited her child at the Department of Children and Family Services twice a week. Battle had family in the area, lived with codefendant, and had not been employed for several months. She said she was looking for work and attending therapy twice a week.

¶ 12    Battle had no "publishable background." And "a pretrial report" noted Battle had "a two out of six on the new criminal activity scale and a one out of six on the failure to appear scale."

¶ 13    Counsel for Battle argued for conditions short of pretrial detention. Electronic monitoring would "prevent [Battle] from posing a risk of threat to anyone in the community." And an admonishment from the court or "GPS" would protect the complainant. Counsel contended, "the facts of this case are largely [dependent] on [the complainant], and that due to the history of that, [the complainant] is not credible."

¶ 14    The trial court granted the State's petition to detain. The trial court found (i) Battle stood accused of detainable offenses, (ii) clear and convincing evidence showed Battle's "evident" guilt of those offenses, (iii) Battle was a "real and present threat" to complainant, and (iv) "no means or least restrictive conditions that would avoid or clarify that present threat" to complainant's safety.

¶ 15    Battle timely appealed. Her notice of appeal contains the grounds for the relief she requests, consistent with Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023). She declined to file a separate memorandum. The State filed a response.

¶ 16                                    ANALYSIS

¶ 17    Battle seeks "release on electronic monitoring, or alternatively, a new detention hearing," raising four claims. Each claim focuses on procedures underlying her pretrial detention hearing:

(i) the State presented no evidence to show Battle poses a real and present threat to the safety of "the community in general," (ii) the State "presented no witnesses, no video evidence, no physical evidence, no signed on [sworn] statement," (iii) the trial court "did not consider any other conditions" except pretrial detention, and (iv) the trial court denied an opportunity for a fair hearing.

¶ 18 Battle's claims require us to interpret the Code, as amended by the Act. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1 (noting neither "Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act" nor "Pretrial Fairness Act" are "official" names but common shorthand for the sequence of public acts). We analyze legal questions *de novo*. *People v. Ramirez*, 2023 IL 128123, ¶ 13.

¶ 19                              Proper Hearing on Petition to Detain

¶ 20 Section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)) contains the process for hearings on petitions to detain defendants like Battle.

¶ 21 The State starts this process by filing a verified petition like the one the State filed against Battle. See 725 ILCS 5/110-6.1(a) (West 2022). The State may only seek Battle's pretrial detention by charging her with detainable offenses. See 725 ILCS 5/110-6.1(a) (West 2022) (listing offenses that may lead to pretrial detention). Here, the State charged Battle with robbery (720 ILCS 5/18-1(a) (West 2022); see 725 ILCS 110-6.1(a)(1.5) (West 2022) (listing forcible felonies as that section uses term)) as well as aggravated vehicular hijacking (720 ILCS 5/18-4(a)(3) (West 2022)) and aggravated battery in a public place (720 ILCS 5/12-3.05(c) (West 2022); see 725 ILCS 110-6.1(a)(1) ("felony offense[s] other than a forcible felony")).

¶ 22                              Real and Present Threat to Complainant

¶ 23   Along with charging detainable offenses, the State must allege "that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(a)(1), (1.5) (West 2022). The State alleged Battle posed "a real and present threat to the safety" of the complainant, who Battle and codefendant, Battle's girlfriend, allegedly "tricked" into driving to a place where they beat her and stole her car.

¶ 24   Battle challenges the State's focus on a threat to the safety of a specific person (complainant) to the exclusion of "the safety of the community in general." Battle notes she "has no criminal history, and her pretrial service scores were a 2 on the new criminal history scale, and a 1 on the failure to appear scale." But Battle's objection fails to consider the plain language of section 110-6.1, properly focusing on "the real and present threat to the safety of any person," a recognition that just one individual satisfies the requirement. Battle neither contends that she presented no real and present threat to the complainant nor could she, given her admitted conduct.

¶ 25                     Proffer as Proof

¶ 26   Battle next attacks the type of evidence the State introduced. In her view, the State failed to carry its burden of proof because the State "presented no witnesses, no video evidence, no physical evidence, [and] no signed on [sworn] statement." Battle's objection finds no support in the Code.

¶ 27   The State and defendants alike "may present evidence at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022). Both parties properly did. Indeed, on appeal, Battle cites proffered evidence about "pretrial service scores," arguing the

State failed to prove she posed a real and present threat to "the community in general." Her argument is proper even if it lacks merit.

¶ 28                    Trial Court Considered Conditions Other Than Detention

¶ 29    Battle also challenges how the trial court presided over the hearing. In her view, the trial court "did not consider any other conditions" except pretrial detention.

¶ 30    The record refutes Battle's contention. The trial court heard a proffer stating in part that Battle and codefendant committed a premeditated crime: They knew the complainant, tricked her into meeting up, and attacked her by strangling her with the strings of her hooded sweatshirt. The trial court then considered and rejected counsel for Battle's argument that electronic monitoring would "prevent [Battle] from posing a risk of threat to anyone in the community" and a court admonishment or "GPS" would protect the complainant. Generally, this court "presume[s] the circuit court knows, follows, and applies the law, unless the record affirmatively rebuts that presumption." *People v. Inman*, 2023 IL App (4th) 230864, ¶ 14. Here, the record confirms our presumption about the trial court's competence.

¶ 31                    Trial Court Provided Fair Hearing

¶ 32    Lastly, Battle asserts the trial court "denied [her] an opportunity for a fair hearing prior to the entry of the order denying *** pretrial release." Battle offers no facts supporting this contention. Instead, she cites the Code's language, writing, "The defendant is entitled to an immediate hearing on a detention petition conducted in accordance with the statutory requirements, unless a continuance is granted. 725 ILCS 5/110-6.1(c)(2)."

¶ 33    To the extent Battle contends the trial court rushed her into the hearing, the record refutes her claim. Counsel for Battle acknowledged receipt of the State's petition to detain and announced

herself as ready to proceed with the court's inquiry. We are "entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. [This] court is not a depository in which the appellant may dump the burden of argument and research." (Internal quotation marks omitted.) *People v. Macias*, 2015 IL App (1st) 132039, ¶ 88. Counsel has not done so.

¶ 34    Affirmed.

***People v. Battle*, 2023 IL App (1st) 231838**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23400521701; the Hon. John W. Wilson, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Abir Ahmed, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Whitney Bond, Assistant State's Attorney, of counsel), for the People. |