2024 IL App (1st) 231996-U

No. 1-23-1996B

Second Division
January 4, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) ) | No. 23 DV 7523201 |
| v. | ) ) | |
| JOVANNI BROWN, | ) ) | Honorable Thomas Nowinski |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the trial court's order denying defendant-appellant's pretrial release where the court found that there were no less restrictive conditions or combination of conditions to avoid the defendant's real and present threat to the safety of any person or the community.

¶ 2    On October 10, 2023, defendant-appellant, Jovanni Brown, was arrested and charged with aggravated domestic battery with strangulation, a Class 2 felony,[1] pursuant to section 12-3.3(a-5) of the Code of Criminal Procedure (720 ILCS 5/12-3.3(a-5), (b) (West 2022)).[2] On October 12, 2023, the State filed a verified petition for a pretrial detention hearing pursuant to sections 110-2 and 110-6.1 of the Code (725 ILCS 5/110-2, 110-6.1 (West 2022)), commonly referred to as "the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act" (Act) or the "Pretrial Fairness Act." See Pub. Acts 101-652, § 10-255 (eff. Jan. 1, 2023); 102-1104, § 70 (eff. Jan. 1, 2023); Ill. S. Ct. R. 604(h)(1) (eff. Oct. 19, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). After appointing counsel for the defendant and hearing argument on the petition, the trial court granted the State's request.

¶ 3    On appeal, the defendant argues that the State failed to meet its burden by establishing, through clear and convincing evidence, that there were no other conditions or combination of conditions that could mitigate the defendant's alleged threat to the complainant. For the reasons that follow, we affirm.

¶ 4                                        I. BACKGROUND

¶ 5                              A. Pretrial Detention Petition

---

[1]As will be discussed later, the record further reflects other pending and separate criminal action against the defendant that was also addressed by the trial court on the day of his pretrial detention hearing.

[2]"Aggravated domestic battery" is defined as the commission of "domestic battery" where the defendant is alleged to have "strangle[d] another individual" by "intentionally impeding the normal breathing or circulation of the blood of an individual by applying pressure on the throat or neck of that individual[,] or by blocking the[ir] nose or mouth ***[.]" 720 ILCS 5/12-3.3(a-5) (West 2022). "Domestic battery," on its own, is a Class A misdemeanor and is defined as "knowingly" and "without legal justification" "caus[ing] bodily harm to any family or household member" or "mak[ing] physical contact of an insulting or provoking nature with any family or household member." *Id.* § 5/12-3.2(a)(1)-(2), (b) (West 2022). Relevant here, "family or household members" include "persons who have or have had a dating or engagement relationship." *Id.* § 5/12-0.1 (West 2022).

¶ 6     On October 12, 2023, the State filed its verified petition for pretrial detention. Therein, the State argued that: the defendant's charged offense of aggravated domestic battery was an eligible offense for pretrial detainment pursuant to section 110-6.1(a)(4) of the Code; the defendant posed a "real and present threat to the safety of any person or persons or the community" based on the fact that he "punched his girlfriend, the victim, and then strangled her;" and "[n]o condition or combination of conditions set forth [in the Code] [could] mitigate that risk."

¶ 7     Although it is not clear as to whether the following items were attached to the State's petition, the record reflects that a supplemental "Public Safety Assessment" conducted by "pretrial services" indicated that the defendant's "criminal activity scale" was equated to a "4" out of 6-point scale, and that the defendant's measured "failure to appeal" score was also a 4 out of 6. Additionally, although the report indicated that the defendant did not have any prior misdemeanor or felony convictions, he had failed to appear in court at least once in the past two years. The report further indicated that the defendant had a "pending case" for "burglary/criminal damage," as well as a "BFW issued on 8/29/2023."[3] Finally, a Chicago Police Department arrest report indicated that, upon his arrest at his high school for his immediate criminal charge, the defendant had attempted to exit and leave the building prior to his arrest.

¶ 8                              B. Pretrial Detention Hearing

¶ 9     On October 12, 2023, at the defendant's first initial appearance following his arrest, the trial court appointed the defendant a public defender and proceeded with the hearing.[4] The State indicated that it had provided the defendant's counsel with copies of the complainant's statement,

---

[3]"BFW" is an acronym for "bond forfeiture warrant," which can be issued after a defendant fails to appear at a scheduled court date. Although the pretrial services report lists the BFW as being issued on August 23, 2023, a Chicago Police arrest warrant indicates it was issued on September 18, 2023.

[4]Appointment of an attorney is required under section 110-5(f) of the Code. *Id.* § 5/110-5(f).

the arrest report, a case report, the complaint, the defendant's criminal history, and an Illinois Law Enforcement Agencies Data System (LEADS) report. The State further indicated that the complainant was electronically present for the hearing via Zoom.

¶ 10    The State subsequently proffered the following in support of its petition.[5] The complainant was 16 years old, attended the same high school as the defendant, and the two had previously been involved in a dating relationship which had ended two weeks prior to the incident. The complainant was said to have been "talking to another boy" at their school, and the defendant received text messages from that boy and "became angry."

¶ 11    On October 8, 2023, the defendant and the complainant were together at a Dunkin Donuts at 4350 North Central Avenue in Chicago, Illinois. After they left the store, the two became engaged in a verbal altercation relating to the complainant's interactions with the other boy. The defendant became upset, and pulled the witness into an alley around 400 North Mason Avenue in Chicago, Illinois. The defendant began to strike the complainant in the face with closed fists, knocked her to the ground, pulled her hair, and hit her in the ears. The defendant then "banged" the complainant's head against a garage door and concrete, grabbed her by the neck, and choked her with both hands until she was unable to breathe and almost lost consciousness. The complainant begged him to stop, to which the defendant responded that he "wanted her gone" and let go of her neck. During that time, the complainant believed she saw another individual in the alley, but the individual did not come to assist her.

¶ 12    After the defendant let go of her neck, the complainant was able to run away and noticed that the defendant began recording the incident on his cell phone. The defendant caught up with

---

[5]We have combined the State's factual proffers both during the hearing and the written materials contained in the record together for purposes of efficiency.

the complainant and grabbed her by the arm. The complainant used a small voltage/stunner or Taser on one of the defendant's hands to free herself. She then ran to her uncle's house, which was located nearby, and the defendant fled in an unknown direction. The complainant called her mother, who in turn called 911. After Chicago Police officers arrived at the complainant's uncle's home, they observed that she had sustained visible injuries from the incident, including a cut and/or laceration on her lip, bruising on one of her eyes, and bruising and other red marks around her neck. The complainant was taken to the hospital that same day for medical treatment.

¶ 13    The State further offered that the defendant also had two pending charges for an unrelated case, which was a misdemeanor charge for criminal trespass to a vehicle, as well as a felony burglary charge for which a warrant had been issued.[6] The defendant also had two prior juvenile cases, namely a 2023 "PCS"[7] and a 2018 battery. The State subsequently rested, and the court made a finding of probable cause.

¶ 14    In mitigation, the defendant argued that he was 18 years old, was a senior at a Chicago public high school, and was a lifelong Chicago resident. The defendant had worked at Wendy's for about six months at the time of the hearing, and had recently been hired at O'Hare Airport to provide gate assistance to airline travelers. The defendant was also involved in a group at school called "Becoming a Man."

¶ 15    The defendant then challenged the timeline of events as set forth by the State. According to the defendant, he and the complainant had discussed her being involved with another individual. The defendant indicated that he no longer wanted to be in a relationship with her and attempted to

---

[6]The documentary record is silent on these charges, but it appears the two were brought within the same case.
[7]The record is not clear as to the meaning of this acronym and we decline to ascribe one here.

leave the conversation. The complainant became upset and tried to prevent him from leaving by grabbing and hitting him, which resulted in some bruising to his chest. The defendant maintained that his only physical contact with the complainant was his attempt to grab her to get her off him, and he denied ever hitting or slamming her against a wall. With regard to the complainant's injuries, the defendant proffered that she had been involved in a separate physical altercation with another individual three days earlier, in which she had sustained injuries. The defendant further speculated that, if in fact the complainant had observed someone else at the scene, then that person would have likely stepped in to intervene based on the alleged intensity and violence of their encounter.

¶ 16    Last, the defendant argued that pretrial detention was unnecessary because there were conditions or a combination of conditions that could be put in place to ensure the complainant's safety. The defendant pointed out that no further incidents or threats of harm had occurred between the two, and that his criminal history was devoid of any further domestic-related arrests or convictions. As such, the defendant reasoned that any additional safety concerns could be mitigated by GPS monitoring or home confinement. The defendant also pointed out that there was already an order of protection in place that prohibited him from being near the complainant and her family, as well as requiring for him to be at least 30 feet away from her at their shared high school.[8]

¶ 17    The State did not reply to the defendant's mitigation argument and thus did not address his request for GPS monitoring or home confinement. Last, the court asked for the recommendation of a representative from "pretrial services," who indicated that the defendant's "new violent

---

[8]The record does not contain any documentary evidence of this particular order of protection.

criminal activity flag [was] a yes, new criminal activity scale [was] a four[,] and failure to appear scale [was] a four." As such, the representative recommended "the maximum conditions" for the defendant.

¶ 18                                    C. Trial Court Ruling

¶ 19    At the conclusion of the hearing, the court orally granted the State's request and denied pretrial release, stating, in full:

"THE COURT: *** Taking into account the factors in determining dangerousness, including the defendant's background, the age of the [complainant], who is 16 years old, the fact that it's proffered that the defendant strangled the [complainant] to the point where she couldn't breathe, that he did all this while having a pending case where there was an arrest warrant issued for his arrest that we will get to, and I am really taking into consideration the fact that *** the [complainant] is 16, and again, that this was done while there was pending charges against him, already, I find that the State has proven by clear and convincing evidence that the proof is evident and the presumption is great that the defendant has committed the offense of aggravated domestic battery, and that the defendant poses a real and present threat to the safety of any person, most importantly the [complainant] who is 16 years old; that he strangled her to the point where she couldn't breathe, and that there are no conditions or combination of conditions to the [c]ourt that can mitigate the real and present threat to the safety of *** any person."

¶ 20    The court's oral ruling was memorialized in a written order that same day. Therein, the court made the following findings. First, the court found that "[t]he proof [was] evident or the presumption great that the defendant has committed an eligible offense listed" within section 110-6.1(a) of the Code, namely aggravated battery, where the defendant was alleged to have strangled

the complainant. Second, the court found that the "defendant pose[d] a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," where the defendant "strangled a minor to [the] point where she could not breath[e,]" as well as the defendant's prior criminal background. Third, the court found that "[n]o condition or combination of conditions set forth" in section 110-10(b) of the Code could "mitigate the real and present threat to the safety of any person or persons or community based on the specific articulable facts of the case," and that "[l]ess restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific and articulable facts of the case[.]" As to this point, the court found that the defendant had "high scores from pretrial [services], [a] criminal background, [and] strangulation of a minor victim."[9] As such, the defendant was ordered to be detained pending all further court proceedings.

¶ 21    This appeal followed.[10]

¶ 22                                  II. ANALYSIS

¶ 23                                  A. Jurisdiction

¶ 24    Although neither party raises this concern, we must first address our jurisdiction over this appeal prior to evaluating its merits. This appeal comes to us from the granting of the State's petition for pretrial detention. Pursuant to article VI, section 6 of the Illinois Constitution, our

---

[9]In its oral ruling, the trial court also specifically noted that the defendant had a pending criminal matter with an arrest warrant, which it later addressed following its grant of the State's petition. Specifically, with regard to the pending burglary charge, the court executed a warrant and detained defendant. With regard to his criminal trespass to a vehicle charge, the court conducted a "conditions" hearing for the non-detainable offense and found probable cause. Finally, the court noted that an order of protection had been entered against him pursuant to "Case No. 23 OP 78942," with the "protected parties" being "Marla Gomez" on behalf of the complainant in this case, as well as Marla Gomez and one other party. The court ordered, among other conditions, that defendant was to have no communication with the complainant and was to remain at least 30 feet away from her while in common areas of their shared high school.

[10]Pursuant to Supreme Court Rule 604(h)(2) (eff. Oct. 19, 2023), the defendant declined to file a memorandum in support of his appeal, and instead has elected to stand on his notice of appeal.

supreme court has promulgated rules to allow for certain appeals in criminal, postconviction, and juvenile court proceedings. See Ill. Const. 1970, art. VI, § 6. Relevant here, Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023) (same version in effect at time of appeal) governs appeals from orders under the Act which grant petitions to deny pretrial release. Both the State and the defendant may appeal any interlocutory orders imposing conditions of pretrial release. 725 ILCS 5/110-5(k) (West 2022); see also Ill. S. Ct. R. 604(h), 604(h)(1)(iii). A notice of appeal must be filed within 14 days of the order denying pretrial release. Ill. S. Ct. R. 604(h)(2).

¶ 25    Here, the record reflects that the defendant properly appealed an interlocutory order denying his pretrial release, and his appeal is timely. The order was entered on October 12, 2023, and the defendant filed a notice of appeal on October 26, 2023, at 6:44 p.m. Pursuant to Illinois' statute on statutes, the proper computation regarding the timeliness of an appeal does not include the first day the notice of appeal was filed (here, October 12), but includes the last day (October 26), thus rendering the defendant's appeal to have been filed within 13 days. See 5 ILCS 70/1.11 (West 2022) (computing timelines within a statute); 5 ILCS 70/1.39 (West 2022) (application to the Code of Criminal Procedure of 2012). Even assuming October 26 counted as the 14th day, our supreme court rules allow for timely electronic filing up until midnight for a given deadline. See Ill. S. Ct. R. 9(d) (eff. Feb. 4, 2022). Therefore, we have jurisdiction over this appeal.

¶ 26                                B. The Act

¶ 27    As noted by the State, the defendant's only challenge on appeal concerns the trial court's finding that there were no conditions or combination of conditions that could have been put in place to mitigate any risk he posed to the complainant, her family, or the community at large. As such, he does not challenge that his aggravated domestic battery charge was a detainable offense under the Act. He also does not challenge the trial court's finding of "dangerousness," although

the State appears to characterize the assessment of this finding as whether the State proved, "by clear and convincing evidence, that he committed the charged offense." See 725 ILCS 5/110-6.1(a)(1.5). Given the newness of the statutory scheme at issue, as well as its numerous overlapping discretionary considerations, we begin with a summary of the relevant sections of the Act.

¶ 28                                    *1. The Petition and Hearing*

¶ 29     The Act presumes that all persons charged with an offense shall be eligible for pretrial release prior to conviction. *Id.* § 110-2(a); § 110-6.1(e). Therefore, "[p]retrial release may be denied *only* if a person is charged with an offense" as delineated within section 110-6.1 of the Act, and if the court has conducted a corresponding hearing. (Emphasis added.) *Id.* § 110-2; § 110-6.1(e)-(f). Pretrial detention should only be ordered to effectuate the Act's goals, which include reasonable assurance of an eligible person's appearance in court, ensuring the safety of any other person or the community, the prevention of any attempt or obstruction of the criminal justice process, and ensuring compliance with all conditions of release. *Id.* § 110-2(e).

¶ 30     The State will trigger the requirement for a pretrial detention hearing upon its timely filing of a verified petition for detainment. *Id.* § 110-6.1(a). The State must prove three elements in its petition, which it bears the burden of proving by clear and convincing evidence. *Id.* § 110-6.1(e). First, it must show that the "proof is evident or the presumption great" that the defendant has committed an eligible detainable offense. *Id.* § 110-6.1(e)(1). Next, for the eligible offense of aggravated domestic battery, the State must show that a defendant "poses a "real and present threat to the safety of any persons or persons or the community, based on the specific articulable facts [of their case]," which may include conduct involving a forcible felony, the obstruction of justice,

intimidation, injury, or abuse. *Id.* § 110-6.1(e)(2).[11] Finally, the State must also allege that there are "no conditions or combinations set forth" within the Act that could mitigate that real and present threat to the safety of any person, persons, or the community, based on the facts of the case. *Id.* § 110-6.1(e)(3). The State may utilize evidence of a defendant's available criminal history, any written or recorded statements, police reports, and evidence "by way of proffer based upon reliable information." *Id.* § 110-6.1(f)(1), (2); see also § 110-6.1(f)(5) (evidentiary admissibility rules for criminal trials do not apply to pretrial detention hearings).

¶ 31    Following the filing of the State's petition, the trial court must hold a hearing. *Id.* § 110-6.1(a), (c), (f). In addition to evaluating the merits of the petition, the court must also assess "whether there is probable cause the defendant has committed [the charged] offense[.]" *Id.* § 110-6.1(b). If there is no such finding, the defendant must be released. *Id.* § 110-6.1(b). The court may utilize statewide risk-assessment tools to evaluate the likelihood of a defendant's appearances at future court proceedings or if the defendant poses a real and present threat. *Id.* § 110-6.4. Each

---

[11]A finding as to whether a defendant "poses a real and present threat to the safety of any person or persons or the community" is also referred to as a finding of "dangerousness." *Id.* § 110-6.1(g). As noted above, the defendant does not challenge the trial court's finding of "dangerousness." However, many of the factors used to determine "dangerousness" overlap with the factors used to determine whether there are available conditions of release that could offset a defendant's dangerousness. They include: "(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense; (2) The history and characteristics of the defendant[;]; (3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat; (4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them; (5) The age and physical condition of the defendant; (6) The age and physical condition of any victim or complainant; (7) Whether the defendant is known to possess or have access to any weapon or weapons; (8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of sentence for an offense under federal or state law; (9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.* § 110-6.1(g).

decision regarding release is individualized, and no single factor or standard is determinative. *Id.* § 110-6.1(f)(7).

¶ 32                              *3. Conditions of Release*

¶ 33     If the court determines that there is probable cause and that the State has met its burden on its petition, the court must make a written finding which summarizes its reasons for pretrial detention. *Id.* § 110-6.1(h)(1)-(4). Relevant here, if the court finds that the State has proven the third element of its petition, that there are no such conditions that could mitigate a defendant's real and present threat, the court must also include in its order why "less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case[.]" *Id.*

¶ 34     Conditions of release are proper when "it is determined that they are necessary to ensure the defendant's appearance in court, [to] ensure the defendant does not commit any criminal offense, [to] ensure the defendant complies with all conditions of pretrial release, [to] prevent the defendant's unlawful interference with the orderly administration of justice, or [to] ensure compliance with the rules and procedures of problem solving courts." *Id.* § 110-10(b). Certain conditions are "mandatory" as provided for within section 110-10(a) of the Act, while others are discretionary in nature. *Id.* § 110-5(c). Regardless, such conditions must be "the least restrictive means" and "individualized." *Id.*, § 110-10(b). The trial court may also use a "regularly validated risk assessment tool" to aid in its determination of appropriate conditions of release. *Id.* § 110-5(b). Overall, the trial court is empowered to impose "other reasonable conditions," "so long as these conditions are the least restrictive means to achieve the goals" of the Act. *Id.* § 110-10(b)(9).

¶ 35     Relevant here, some conditions may include pretrial home supervision with electronic monitoring, or compliance with the terms and conditions of an order of protection. See *Id.* § 110-

10(b)(5), (7). Electronic monitoring, GPS monitoring, or home confinement can only be imposed as a condition of pretrial release if "no less restrictive condition of release or combination of less restrictive condition[s] of release would reasonably ensure the appearance of the defendant for later hearings" or to "protect an identifiable person or persons from imminent threat of serious physical harm." *Id.* § 110-5(g). Such a finding must be included in the court's written order. *Id.* § 110-5(h).

¶ 36                   *4. Determining Whether Conditions of Release are Proper*

¶ 37     To determine whether any conditions of release are proper, the court considers similar factors to those used to assess "dangerousness," which are contained in section 110-5(a) of the Act. *Id.* § 110-5(a). As shown below, these factors focus heavily on the nature of the crime, the personal profile of a given defendant, and his perceived threat to the complaint and community at large. Such factors include:

"(1) the nature and circumstances of the offense charged;

(2) the weight of the evidence against the defendant, except that the court may consider the admissibility of any evidence sought to be excluded;

(3) the history and characteristics of the defendant;[12]

(4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, that

_____

[12]"History and characteristics" as defined within this section differs slightly from the definition contained within section 110-6.1 governing "dangerousness." Here, they are defined as: "(A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, history[,] criminal history, and record concerning appearances at court proceedings; and (B) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." *Id.* § 110-5(a)(3)(A)-(B).

would be posed by the defendant's release, if applicable, as required under paragraph (7.5) of Section 4 of the Rights of Crime Victims and Witnesses Act;

(5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release, if applicable." *Id.* § 110-5(a)(1-5).

¶ 38 In addition, if a defendant is charged with aggravated battery against a spouse or former partner with whom they have or had a cohabitation or dating relationship, the court also considers:

"(A) whether the alleged incident involved harassment or abuse,[13] as defined in the Illinois Domestic Violence Act of 1986;

(B) whether the person has a history of domestic violence, as defined in the Illinois Domestic Violence Act of 1986, or a history of other criminal acts;

(C) the mental health of the person;

(D) whether the person has a history of violating the orders of any court or governmental entity;

(E) whether the person has been, or is, potentially a threat to any other person;

(F) whether the person has access to deadly weapons or a history of using deadly weapons;

(G) whether the person has a history of abusing alcohol or any controlled substance;

---

[13]"Abuse" as defined within the Illinois Domestic Violence Act of 1986 as "physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation but does not include reasonable direction of a minor child by a parent or person in loco parentis." 750 ILCS 60/103(1) (West 2022). "Harassment" is defined as "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress[]" and can include "threatening physical force, confinement, or restraint on one or more occasions." *Id.* § 60/103(7), 60/103(7)(vi).

(H) the severity of the alleged incident that is the basis of the alleged offense, including, but not limited to, the duration of the current incident, and whether the alleged incident involved the use of a weapon, physical injury, sexual assault, strangulation, abuse during the alleged victim's pregnancy, abuse of pets, or forcible entry to gain access to the alleged victim;

(I) whether a separation of the person from the victim of abuse or a termination of the relationship between the person and victim of abuse has recently occurred or is pending;

(J) whether the person has exhibited obsessive or controlling behaviors towards the victim of abuse, including, but not limited to, stalking, surveillance, or isolation of the victim of abuse or the victim's family member or members;

(K) whether the person has expressed suicidal or homicidal ideations; and

(L) any other factors deemed by the court to have a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of that behavior." *Id.* § 110-5(a)(6)(A)-(L).

¶ 39    With this framework in mind, we now turn to the merits of the defendant's appeal.

¶ 40                                C. Standard of Review

¶ 41    The parties take conflicting views on the standard of review in this proceeding. The defendant argues that the standard of review on appeal is "clear and convincing evidence," which, according to him, equates to a "quantum of proof that leaves no reasonable doubt in the factfinder's mind about the truth of the proposition in question," citing *In re Tiffany W.*, 2012 IL App (1st) 102402-B in support. Here, the defendant continues, clear and convincing evidence "amounts to more than preponderance [of the evidence] while not quite reaching the degree of proof necessary to convict an individual of a criminal charge."

¶ 42    The State responds that the correct standard is abuse of discretion, citing a recent case from the Fourth District addressing the same statute, *People v. Inman*, 2023 IL App (4th) 230864, as well as opinions which assessed our state's prior bail provisions, *People v. Simmons*, 2019 IL App (1st) 191253, and *People v. Johnson*, 2019 IL App (3d) 190582. However, the State argues, even if the appropriate standard is manifest weight of the evidence, the trial court's decision to detain the defendant should still be affirmed.

¶ 43    There is, without question, some debate among the appellate districts, and even among the divisions in the First District, concerning the appropriate standard of review. See *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 22-24 (observing split between districts regarding abuse of discretion and manifest weight of the evidence standard under the Act). Although the Act provides that the State's burden on a pretrial detention petition is "clear and convincing evidence," under the previous regime for bond hearings and their subsequent appeals, we employed an abuse of discretion standard. See *Simmons*, 2019 IL App (1st) 191253, ¶ 9; see also *Inman*, 2023 IL App (4th) 230864, ¶ 10. Because the new statute does not expressly provide for a new or different standard of review, some courts have determined that the abuse of discretion standard is still applicable. See *People v. Whitmore*, 2023 IL App (1st) 231807 ¶ 18 (noting no clear legislative intent within the new statute to disrupt such precedent); see also *Inman*, 2023 IL App (4th) 230864, ¶ 11 (observing that in reviewing an appeal brought pursuant to Supreme Court Rule 604(h), "we are not reviewing the State's evidence anew" and instead "are reviewing the circuit court's evaluation of that evidence[.]"). However, some courts have stated that the trial court's factual findings under the statute should be resolved under a manifest weight of the evidence standard. See *People v. Rodriquez*, 2023 IL App (3d) 230450, ¶ 8; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12; *People v. Gibbs*, 2023 IL App (5th) 230700-U, ¶ 5 (evaluation of the

"dangerousness" prong of the Act is reviewed pursuant to the manifest weight of the evidence standard).[14] Other courts have said the same standard applies when assessing whether conditions of pretrial release could mitigate any dangerousness posed by a defendant. See *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. Finally, other courts have also articulated the standard as *de novo*, even when evaluating the propriety of the trial court's assessment of the proffered evidence and what condition or combinations may be appropriate. See *People v. Battle*, 2023 IL App (1st) 231838, ¶¶ 17-18.

¶ 44     As noted by another panel in our district, "[w]e expect there is much left to be said about the standard of review[,] [b]ut this is not the case to resolve it." *Herrera*, 2023 IL App (1st) 231801, ¶ 24. Here, we also need not resolve this issue because, under any standard, our conclusion as to whether the trial court properly ordered detention would be the same. See *Whitmore*, 2023 IL App (1st) 231807 ¶ 18 (citing *Simmons*, 2019 IL App (1st) 191253, ¶ 9 (a trial court's decision shall only be reversed if found to be "arbitrary, fanciful[,] or unreasonable[,] or when no reasonable person would agree with the position adopted by the trial court." (Internal quotation marks omitted.); see also *Vingara*, 2023 IL App (5th) 230698, ¶ 10 ("[a] finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.") (Internal quotations and citations omitted.) For the reasons that follow, we do not believe it was unreasonable for the trial court to determine that there were no conditions or combinations of conditions that could have mitigated the harm posed by the defendant.

---

[14]Subsequently, though, the same court stated that consideration of the statutory factors described above to determine whether the trial court properly determined "dangerousness" is reviewed for abuse of discretion. *Gibbs*, 2023 IL App (5th) 230700-U, ¶ 5; see also *People v. Flores-Hidalgo*, 2023 IL App (1st) 231837-U, ¶¶ 13-14.

¶ 45    C. Whether There Were Conditions to Mitigate the Defendant's Real and Present Threat[15]

¶ 46    The defendant contends that the trial court could have placed various conditions on him to allow for his release that would have sufficiently mitigated any potential threat he posed to the complainant. The defendant notes that the State did not proffer any other evidence of continuing communication between him and the complainant prior to his arrest at school, where both he and the witness were enrolled. Additionally, the defendant continues, the State did not show evidence of any other domestic battery convictions or arrests. As such, the defendant reasons, the court could have ensured the complainant's safety through a no-contact order, GPS and/or home confinement, or electronic home monitoring. The defendant further points out that an order of protection was already entered against him from a case filed by the complainant's mother, where he was already prohibited from having contact with the complainant and her family, and in the event that they were both present at school together, he was required to be at least 30 feet away from her.

¶ 47    The State responds that the record supports the trial court's decision to detain the defendant. According to the State, its proffer demonstrated that the defendant posed a real and present threat to the complainant based on his actions toward her on October 8, which in turn "reflected an inability or unwillingness to manage his anger, control his aggression, and restrain himself from attempting to inflict additional harm on an already injured individual seeking to escape." Additionally, the State continues, the defendant already had an extensive criminal history in light of his age, which included two juvenile adjudications for battery and possession of a controlled

---

[15]The defendant's notice of appeal challenges the trial court's conclusion that no conditions or combination of conditions could mitigate the defendant's real and present threat to the safety of any person, persons, or the community. The defendant filed no supporting memorandum, electing to stand on his notice. Accordingly, we confine our review to the sole issue identified in the notice of appeal.

substance, as well as two open cases arising from incidents that occurred prior to the instant matter and which further involved a pending warrant for a felony burglary charge. As such, the State reasons, the defendant's actions reflect his "total disregard for the law and the authority of the court," indicating that there were no such conditions that could have mitigated the threat.

¶ 48    We turn to the record. As noted prior, in its oral ruling, the trial court made three express findings, the first being that the State had proved by clear and convincing evidence that the defendant had committed the charged offense of aggravated domestic battery. Next, it expressly stated that there were "no conditions or combination of conditions *** that [could] mitigate the real and present threat to the safety *** of any person." In particular, the court highlighted the "defendant's background," the "age of the victim," the fact that the defendant strangled the complainant to the point where she could not breathe, and that defendant also had a pending warrant for his arrest in a separate case. Further, in its written ruling, the court found that no condition or combination of conditions could mitigate the real and present threat, and there were no less restrictive conditions that existed to avoid a real present harm, based on the defendant's "high scores from pretrial, criminal background, [and] strangulation of [the] minor victim."

¶ 49    In its oral ruling, the trial court appeared to combine its "dangerousness" and "conditions" findings, which, as demonstrated above, is reasonable, given that many of the factors evaluating the propriety of conditions in section 110-5(a) overlap with those in section 110-6.1 assessing "dangerousness." See *Id.* § 110-5(a), 110-6.1(g). However, on this point, we must first reiterate the role of the State in these proceedings. The Act places the burden on the State to show clear and convincing evidence not just of a given defendant's dangerousness, but also whether there are no such conditions that could mitigate a given defendant's real and present threat. On this point, we find a discussion authored by another panel within our district to be instructive. In *People v. Stock*,

2023 IL App (1st) 231753, we reversed and remanded the trial court's finding that no condition or combination of conditions could mitigate the threat posed by defendant. *Id.* ¶¶ 21-22. There, the State filed a petition to detain the defendant after he was charged with one count of aggravated battery/discharge of a firearm. *Id.* ¶ 1. The State's proffer was that the defendant became angry at his estranged wife as she packed her belongings to leave the marital home after telling him she planned to file for divorce. *Id.* ¶ 5. The defendant threw a broom at his wife and her friends, then went into the bedroom, picked up a handgun, and discharged one round into the bedroom wall. On the other side of the wall was an adjoining bathroom, where the defendant's wife was present at the time of the gunshot. *Id.* The discharged round penetrated the wall, and the wife suffered a grazing wound to her stomach and an injury to her hand from shrapnel from the fragmented bullet. *Id.*

¶ 50　　The State also offered the recommendation of pretrial services through a public safety assessment of the defendant, which reported scores of "1 out of 6" on the "new criminal activity scale" and a "1 out of 6" on the "failure to appear" scale. *Id.* ¶ 7. In mitigation, the defendant argued that he was 45 years old, held both college and graduate degrees, was employed full time, and did not have any prior criminal history. *Id.* ¶ 6. As such, the defendant requested either home confinement or GPS monitoring instead of pretrial detention. *Id.* Subsequently, the trial court found that the State met its burden on all elements of the petition and ordered the defendant to be detained. *Id.* ¶ 7. In its written form order, in the space provided to describe why the State had proved the third element that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community, the court "simply" wrote that "[t]he defendant shot a firearm at the complaining witness." *Id.* ¶ 8.

¶ 51    On appeal, we determined that the State failed to meet its burden on the third element because it had presented "*no evidence*" on this element. (Emphasis added). *Id.* ¶ 17. We noted, in part, that the State had merely provided a "conclusory statement" as to the conditions element of the Act, and had never referenced or discussed these conditions as shown throughout the record. *Id.* We further stated that:

> "It must be noted that, logically, the bare allegations that [the] defendant has committed a violent offense are not sufficient to establish this element. Our legislature has mandated that all criminal defendants are eligible for pretrial release. *** Thus, even those accused of violent offenses are presumed eligible for pretrial release, and it is the State who must justify their pretrial detention. *** This is not to say that alleged facts stating the basic elements of an offense are not relevant or are not part of the proof that no conditions could mitigate the threat posed by a defendant. *But more is required.* If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." (Emphasis added.) (Internal citations omitted.) *Id.* ¶ 18.

¶ 52    Notably, however, the *Stock* court also observed that the trial court had too fallen short of its statutory duties under the Act. *Id.* ¶ 20. As noted prior, the trial court must also make written findings as to why less restrictive conditions would not avoid a real and present threat to the safety of any person and community. 725 ILCS 5/110-6.1(h)(1). The *Stock* court found no such compliance in the court's written order, and even when taking into account the court's oral pronouncement, no such reasoning could be deduced. Instead, the *Stock* court noted, the trial court had simply written that the defendant had shot a firearm at the witness.

¶ 53    In the case at bar, we observe that, as in *Stock*, the State supplemented its petition with a pretrial supplemental assessment report assessing the defendant's criminal history. It is also true that here, as in *Stock,* a representative testified on behalf of pretrial services. Finally, as in *Stock*, the State did not offer any additional information or argument in either its petition or before the trial court as to why any available conditions were insufficient, even after defense counsel in both cases raised the possibility of GPS monitoring or home confinement.

¶ 54    However, the factual similarities between our case and *Stock* end there, and thus are the reasons why that, despite the deficiencies in the State's proffer before us today, we nonetheless find that there was sufficient evidence in the record for the trial court to conclude that pretrial detention was necessary. Under the Act, not only is the trial court empowered to consider the assessment of pretrial services, but it may also consider the defendant's history, characteristics, and noncompliance with court orders or any other governmental entity. *Id.* § 110-6.4, 110-5(a)(3), 110-5(a)(5), § 110-5(b). In *Stock*, the defendant had no prior criminal history. In contrast here, the record reflects that, within a short timeframe, the defendant had already accumulated unrelated charges, including criminal trespass to a vehicle and felony burglary charge with an accompanying arrest warrant for failure to appear, which was discussed by both the State at the hearing and was included in the pretrial supplement assessment report.[16] Further, although we do not have documentary evidence in the record concerning these convictions, the defendant also did not deny that he had been adjudicated at least twice as a juvenile. Finally, unlike in *Stock*, a representative

---

[16]We are mindful, however, that the Act cautions our focus on this factor. See *Id.* § 110-1 (isolated instances of nonappearance in court alone are not necessarily evidence of a willful flight risk, but can be considered as factors in assessing any future attempts to evade prosecution

from pretrial services scored the defendant "4" out of "6" on its relevant assessment scores, whereas the defendant in *Stock* scored "1" out of "6."

¶ 55    The court also properly considered the nature and circumstances of the charged offense, including the fact that the offense was domestic in nature. *Id.* § 110-5(a)(1), § 110-5(a)(6)(A)-(L). The State proffered that the complainant was 16 years old, that the two attended the same high school, and that defendant was alleged to have strangled the complainant to the point where she could not breathe. The trial court expressly noted these considerations in its oral ruling, as well as in his written order. The weight of the evidence of the charge itself was also considered, where the court found evidence of probable cause, as well as that the State had proved, by clear and convincing evidence, that the "proof [was] evident or the presumption great that the defendant" had committed the crime of aggravated domestic battery. See *Id.* § 110-5(a)(2). Although the State and the defendant provided opposing proffers as to the nature of the altercation between himself and the complainant, the defendant admitted to some kind of physical encounter between the two, and we are further mindful that the trial court is in the best position to assess the proffer and the credibility of the witnesses before it. See *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 56    Further, we note that much of the defendant's argument concerning whether any such conditions could mitigate his posed threat are solely directed towards the safety of the complainant and her family. This, however, glosses over any assessment as to whether he is dangerous to the community in general, which was also properly taken into account by the trial court See *Id.* § 110-5(a)(4). As delineated multiple times throughout the Act, pretrial detention is meant to serve more than the safety of the immediate victim of harm, but also the larger community, whose safety appears to have been already at risk based on the defendant's pending burglary and criminal trespass to vehicle charges. See *Id.* § 110-6.1(a)(1), (e)(2)-(3).

¶ 57 Accordingly, based on our careful review of the record, and mindful of the State's burden on its petition, we agree that no such conditions would have been sufficient to justify the defendant's release given his continuing and escalating pattern of violence, his previous attempts to evade prosecution in this case and others, and the fact that the complainant was a minor with whom he had been romantically involved. In our view, the trial court properly assessed that the defendant's real and present threat to both the complainant and the community at large could not be mitigated with any lesser restrictive means. Accordingly, we do not find that the trial court committed error in granting the State's request for the defendant's detainment prior to trial.

¶ 58                                    III. CONCLUSION

¶ 59 For the reasons stated, we affirm the judgment of the circuit court.

¶ 60 Affirmed.