2025 IL App (1st) 250130-U
No. 1-25-0130B
Order filed April 25, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 CR 01530 01 |
| | ) | |
| KAYIN JACKSON | ) | The Honorable |
| | ) | Kevin P. Cunningham, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*: Affirmed. Trial court did not err by finding continued detention was necessary.

¶ 2     Kayin Jackson appeals from the trial court's refusal to release him from pretrial detention under what is popularly known as the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act or the Pretrial Fairness Act. Nothing in the record undermines the trial court's finding that the State's discovery supported the earlier detention orders. We affirm.

¶ 3                                     Background

¶ 4     The trial court ordered Jackson detained and, after that, ordered his continued detention. Later, Jackson again challenged the detention, asserting that additional discovery from the State amounted to "a change in circumstances" warranting his release. The trial court held that the State's discovery did not "defeat" its prior orders and that continued detention was "necessary."

¶ 5                                 *Detention Hearing*

¶ 6     Jackson stood accused of attempt first-degree murder (720 ILCS 5/8-4(a) (720-5\9-l (a)(1)) (West 2024)) and other offenses for allegedly shooting at his coparent and her boyfriend, twice, as they dropped off a child for a visitation. The State petitioned to detain Jackson before trial.

¶ 7     The State proffered that, during the drop off, Jackson flashed a gun at and spit on the boyfriend when he asked Jackson to talk. Jackson and the boyfriend began fighting. The coparent took the child inside Jackson's house. When the boyfriend got back in the car, Jackson fired four shots. The boyfriend drove off and returned to pick up the coparent. As she got into the car, Jackson fired five more shots, which hit the car and the boyfriend's leg. Jackson later told officers that he "just blanked" while shooting, and that "some tension" arose because the boyfriend had been reaching out to Jackson over social media. Jackson did not possess a firearm owner identification or a concealed carry license.

¶ 8     Jackson proffered how he later told officers he used a gun in self-defense when the boyfriend "came toward him" and "started swinging." Jackson, 22 years old, had no prior convictions, lived with his stepfather, and worked as a janitor. He helped support his two children.

¶ 9     Pretrial Services scored Jackson along several scales, concluding that "Level 3 Supervision" would be proper.

¶ 10    The trial court granted the State's petition to detain. The State had carried its burden to show: (i) Jackson had committed a detainable offense—attempt first-degree murder, (ii) Jackson presented a real and present threat to his coparent, her boyfriend, and the community near the shooting, and (iii) no condition short of detention would suffice because Jackson "did not take the moment to cool down" and instead shot twice using a firearm he unlawfully possessed. Jackson did not appeal that order.

¶ 11                    *First Continued Detention Order*

¶ 12    Ten months later, Jackson asked the trial court to "review" its detention order, considering "two different changes of circumstances" arising from additional discovery. First, he contended that home-security footage supported his claim of self-defense by showing the boyfriend first approached Jackson, who was "actually the victim of aggression." Second, Jackson contended the footage showed the boyfriend "shooting at him" when returning with the car to pick up the coparent after the first round of shots. The State confirmed that, in a ballistics report, its expert noted how at least one recovered bullet appeared to be fired from a second firearm.

¶ 13    The trial court continued the matter to review the original detention hearing and the home-security footage. That footage is not part of the record on appeal. But Jackson's shouting and apparent rage in the footage led the trial court to say, "I can't think of anything more dangerous than what I saw on the video." The court recounted the footage:

> "They do accomplish the drop-off of the one-year-old. And after that drop-off occurs, the defendant fires a series of gunshots from what appears to be his front porch toward the car, where the [boyfriend] is seated behind the wheel. I would guess that was about three or four house lengths down from his house at the time, with his [coparent] somewhere near

the very porch where he was firing from. The victim drove off down the block, the [coparent] ran toward the car, ultimately got in the car, and then they drove off the block, passing by the defendant's house to leave the block, where he, from the front porch, threw a second volley of gunshots to the car."

The trial court affirmed that pretrial detention was "necessary." Jackson did not appeal the order.

¶ 14                    *Second Continued Detention Order*

¶ 15    A few weeks later, Jackson filed a "motion for relief," again pointing to discovery to assert that additional evidence supported his claim of self-defense and thus defeated the need to detain him before trial. This motion contended: (i) the State failed to offer four specific types of proof at the original detention hearing, (ii) additional discovery undermined the original detention decision, and (iii) State had since failed to carry its burden to prove "any condition of release" was necessary.

¶ 16    Around a month later, the trial court held a hearing on the motion. Jackson focused on the second point, contending "now" the parties knew the boyfriend "was in fact armed," given "the recovery of a spent shell that did not match the rest of the bullets that were fired from one firearm." In Jackson's view, this evidence undermined his pretrial detention because he had acted in self-defense.

¶ 17    The State disputed Jackson's assertions that the evidence was new, asserting "the ballistics evidence is not new evidence" as the trial court considered that evidence at an earlier hearing. The State also disputed Jackson's self-defense claim, noting, "We've all seen that video. * * * Any allegation of self-defense is speculation at best at this point."

¶ 18    In reply, Jackson clarified that the ballistics evidence was "new" in the sense that it was not available at the original detention hearing.

¶ 19    The trial court found continued detention remained "necessary," after reviewing the original detention decision, the subsequent decision to continue detention, and the "additional shell casing" testing.

¶ 20    Jackson filed a notice of appeal but decided not to file a memo in support, pointing instead to his contentions as raised in his motion for relief.

¶ 21                                    Analysis

¶ 22    Jackson attacks the continued detention order on several grounds. See 725 ILCS 5/110-6.1(i-5) (West 2024) (defining proceedings after detention hearing).

¶ 23                         *No Evidence Supports Release*

¶ 24    Section 110-6.1(i-5) vests in the trial court the power to release from custody those facing trial. *Id.* § 110-6.1(i-5). The Code asks whether anything has changed so that detention is no longer needed. *People v. Thomas*, 2024 IL App (1st) 240479, ¶¶ 13-14. Essentially, the Code presumes detention is necessary, as the trial court had already determined. *Thomas*, 2024 IL App (1st) 240479, ¶ 14. Here, the trial court found that the State had originally carried its burden.

¶ 25    So, when Jackson filed his "motion for relief," only his continued detention was at issue. In general, "[a]t each subsequent appearance * * *, the [trial court] must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2024). Under any standard of review, we would affirm the trial court's ruling. Compare *Thomas*, 2024 IL App (1st) 240479, ¶¶ 15-16 (reviewing for abuse of discretion) with *People v. Wilson*, 2025 IL App (1st) 242454-U, ¶ 21 (reviewing *de novo*).

¶ 26     Jackson offered no new information in support of his request for release. See *People v. Walton*, 2024 IL App (4th) 240541, ¶ 28 (holding new information required for release under section 110-6.1(i-5)). As the State noted, and Jackson apparently conceded, the trial court had considered the ballistics evidence at the first continued detention hearing when rejecting Jackson's request for release. Even more fundamental, the record on appeal does not include the home-surveillance footage central to the parties' litigation and the trial court's orders. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 394 (1984) ("unless there is a contrary indication in the order or in the record, it is presumed that the court heard adequate evidence to support the decision that was rendered"). Thus, no evidence supports Jackson's request for release.

¶ 27                              *No Legal Theory Supports Release*

¶ 28     The other contentions in Jackson's "motion for relief" fare no better. See *People v. Battle*, 2023 IL App (1st) 231838, ¶ 18 (reviewing *de novo* contentions that require us to interpret Code). Even assuming Jackson presented new evidence, his legal theory improperly excludes the proffer of the "crime itself" to argue he does not present a real and present threat to others. Contrary to Jackson's contention, the "specific articulable facts of the case" are relevant under the Code. 725 ILCS 5/110-6.1(e) (West 2024) (defining three elements State must prove to detain those like Jackson).

¶ 29     In addition, Jackson mistakenly faults the State for not offering other specific types of evidence—his "prior criminal history" or past "violent" acts. The Code does not require the State to present those types of proof. See *People v. Mikolaitis*, 2024 IL 130693, ¶ 20 ("Absent from the statutory language outlining what the State must prove in order to detain defendant is any language requiring argument as to specific matters or language dictating what evidence or argument the

State must present in attempting to meet its burden."). Instead, the State may meet its burden by doing what it did here—presenting a proffer about the alleged crime, Jackson's relationship to the alleged victims, and Jackson's statements about the events leading to his pretrial detention. 725 ILCS 5/110-6.1(e) (West 2024).

¶ 30     Finally, Jackson contends the State "did not meet" its burden at "the previous hearing." He cites a provision of the Code that does not apply—section 110-2(b), which concerns the State's burden when asking the trial court to impose a condition of pretrial release. *Id.* § 110-2(b) ("At all pretrial hearings, the prosecution shall have the burden to prove by clear and convincing evidence that any condition of release is necessary."). As we explained, conditions of pretrial release were not at issue, only Jackson's continued detention. See *Walton*, 2024 IL App (4th) 240541, ¶ 28 (holding new information required for release under section 110-6.1(i-5)). Thus, section 110-2(b) offers Jackson no basis for relief.

¶ 31     Affirmed.