2024 IL App (1st) 240274-U

SECOND DIVISION
April 18, 2024

No. 1-24-0274B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2460000734 |
| | ) | |
| LEGEN MITCHELL, | ) | Honorable |
| | ) | Jerome C. Barrido, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justice McBride concurred in the judgment.
Justice Ellis specially concurred in the judgment.

ORDER

¶ 1    *Held*: The circuit court's pretrial detention order is affirmed; the State proved by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant committed the offenses charged; (2) based on the specific, articulable facts of the case defendant poses a real and present threat to the safety of a person, persons, or the community; and (3) based on the specific, articulable facts of the case, no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community.

¶ 2    Defendant, Legen Mitchell, appeals from an order entered by the circuit court of Cook County granting the State's petition for pretrial detention. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      On January 20, 2024, the State charged defendant, Legen Mitchell, with first-degree murder in that he allegedly, without lawful justification, caused the death of Terrel Scott.

¶ 5      On the same day of filing charges, the State filed a petition for a pretrial detention hearing. The State alleged in its petition that the proof is evident or the presumption is great that defendant: (1) has committed an eligible offense set forth in section 110-6.1 of the Criminal Code of 2012 (725 ILCS 5/110-6.1(a)(1), (a)(1.5) (West 2022)); and (2) poses a real and present threat to the safety of a person, persons, or the community based on the specific articulable facts of the case in that:

> "[defendant] came to the victim's house to meet with [the] victim's friends in [the] victim's garage[.] *** [T]wo co-offenders entered the garage, one of them shooting the victim [and] killing him[.] *** [A witness observed defendant] run from the scene, get into a co-offender's vehicle, and fle[e]. Text messages from [defendant's] phone reference a police investigation into him and that all three offenders should 'stand tall' and not tell police anything, as well as burning the vehicle and/or changing its [sic] [license] plates. [Defendant] admitted picking up the two alleged co-offenders but stated that they put a gun to his head;"

and (3) no condition or combination of conditions set forth in 725 ILCS 5/110-10(b) can mitigate the risk.

¶ 6      On January 22, 2024, after a hearing, the trial court granted the State's petition for pretrial detention and entered an order that defendant was to remain in custody pending trial. The trial court's written order states that the proof is evident that defendant committed an eligible offense in the form of first-degree murder by accountability, specifically noting that, although

defendant claims his participation was at gunpoint, defendant never called police; that defendant poses a real and present threat because defendant participated in setting up a neighborhood drug dealer to be murdered and, when the drug dealer was murdered, defendant was seen where the shooters were walking, defendant was present at the murder, and, after the murder, defendant drove the shooters from the scene. The trial court found defendant was a willing and active participant in the murder. Finally, the court's written order states that no conditions can mitigate the real and present threat defendant poses, as electronic home monitoring is inappropriate for the specific facts of this case where defendant "sets up, is a part of, and helps the shooters escape a murder." The trial court further found that "witnesses are in danger from this execution style killing that [defendant] played a role in and the community is at risk as well."

¶ 7      At the pretrial detention hearing, the State proffered evidence that the victim was in his garage, which was set up as a living space, with two other men who are now witnesses to the murder. One of the witnesses was in communication with defendant via text message regarding the sale of cannabis. Defendant messaged the witness to indicate he was on his way to the witness's location. Surveillance cameras captured defendant arriving and going into the garage. Defendant was identifiable in the video by his clothing and, additionally, defendant admitted to being on the scene. Defendant entered the garage through a side door, and he closed the side door behind him. Thirty seconds later, two persons dressed in all black and wearing masks are captured on video "creeping around the side of the garage near the same side door that the defendant *** entered." The two people dressed in black were outside the door for approximately one minute. The victim and witness heard the "jiggling of the door" and the victim went toward the door to see what was happening. The State claimed that, as soon as the victim opened the door, one of the persons outside shot the victim in the head. Both of the people

3

dressed in black fled on foot. As seen on the surveillance video and by his own admission, defendant stepped over the victim's body and ran out of the same door and toward the front of the residence. Defendant fled in the opposite direction of the two people dressed in black, re-entered the vehicle he arrived in, and drove away. Both witnesses identified defendant as the person who had been in the garage with them.

¶ 8    Prior to the shooting, phone records show that defendant's phone and a phone belonging to his cousin, Lyles, were tracking together and the phones were again tracking together after the shooting. A video recording from a gas station in the area showed defendant with Lyles (who police identified from a prior traffic stop and the cell phone he carried) in the vehicle in which defendant arrived at the victim's home. That vehicle was registered to Lyles. Lyles's phone is turned off before the murder, then turned back on after the murder while it continues to track with defendant's phone for the next two hours before the phones go their separate ways.

¶ 9    Surveillance video shows the subject vehicle driving in the area before the shooting with "two individuals dressed in black appearing to walk alongside the vehicle" but no identifications can be made and "[n]either individual is seen entering the [vehicle] or [are] able to be seen talking to any occupants" of the vehicle. The surveillance video only shows two individuals dressed in black with the vehicle driving nearby where the two individuals are walking alongside the vehicle.

¶ 10    Police later arrested defendant on a separate charge and questioned him about the murder. In that questioning, defendant admitted being in the garage when the shooting occurred, he admitted to driving the vehicle, and he admitted to buying cannabis from the witness in the garage. However, defendant stated that he "only came there to buy weed and denied knowing the two [perpetrators]." Defendant stated he did not know the victim that well, had no issue with the

4

victim, and denied even seeing the shooting—having only heard it as his back was turned. Defendant admitted being with Lyles but stated that he was only with Lyles after going to the garage to purchase cannabis. Defendant denied driving anyone to or from the garage but, when confronted with the video evidence, defendant stated "he was forced to pick up two men in black a block over from the location of the murder after the shooting who put guns to his head." Defendant was not specific as to what, if anything, was said or where he dropped the two men off after the shooting. Defendant denied Lyles was with him but stated that he picked up Lyles later.

¶ 11    Another witness, not in the garage, stated that two men in black clothing hopped a gate at the back of the garage after the shots were fired. Those men were followed by a vehicle matching the description of the vehicle defendant drove, and the vehicle appeared to be following the two men.

¶ 12    The State included in its proffer the text message evidence implicating defendant and additionally informed the court that defendant was a party to a conversation in which defendant stated he did not want to be at a block party because the police may be there. In a subsequent interview with police, defendant "essentially told the same story *** except this time he denied what he said about picking up the two men in black" and denied remembering the text messages. Defendant "maintained that neither h[e] nor Lyles had anything to do with the murder."

¶ 13    The State acknowledged in its proffer that defendant does not have any criminal history. The State pointed out, however, that defendant did have a pending domestic violence case that was a misdemeanor only.

¶ 14    Proceeding to its argument, the State highlighted that it is what defendant "does before and what he does after [the shooting] is what we're arguing shows that he was in agreement with

these two individuals in black." The State argued that defendant set up the cannabis deal. The State argued that the evidence showed defendant's cousin, Lyles, was one of the two shooters. The State pointed out that, in one of the surveillance videos from a gas station which was recorded before the shooting, Lyles "has on all black and he has a mask and the individuals that come around the side of the [garage] *** 30 seconds after [defendant] enters this [garage] they're dressed in the same way."

¶ 15    The State argued that the text messages from defendant's phone from after the shooting are significant. The State highlighted defendant's text message that "all three of them have to stand tall and not tell police anything" and argued that the "three of them" means defendant and the two shooters. The State also pointed to defendant's subsequent text message to someone believed to be Lyles to "burn your car" is not normal conversation for innocent people and the circumstantial evidence is that defendant was talking about the shooting in both those text messages. The State argued that the evidence shows defendant was the "set up man" for the shooting, and the evidence is clear and convincing so that it is evident or the presumption is great that defendant is accountable for the murder and therefore poses a real and present threat to the safety of a person or the community. The State also informed the court that, after the murder, defendant appeared to "talk about what looks like to be robberies with the other individuals."

¶ 16    The State argued no conditions could mitigate the risk posed by defendant because "[w]e do not want this individual to continue to be out of custody where he [could] set up more situations like this or try to harm any witnesses or civilians." The State further argued that defendant is a danger to the community as shown by his "setting up this type of situation where he sets up an innocent person to be killed."

¶ 17    The defense argued that the evidence is consistent with defendant's version of events in

which he is surprised by the shooting. Defendant argues the text messages are not "clear on the face of them that they are in reference to this incident rather than some other incident, some other discussion." The defense noted that the text messages contained "no reference to the details of this crime" and did not use the word "murder."

¶ 18    The defense argued that the evidence was not clear nor was the presumption great that defendant was a threat to anyone's safety because "this is a weak accountability case," and all of defendant's alleged connections to the shooters "are made before and after [the shooting] to the extent that they've been shown at all." The defense argued that, even if the court were to accept the State's characterization of events, it still does not show a strong likelihood that defendant knew what was going on ahead of time, and that "there is no reason for you to believe that he is the mastermind of any of this." According to defendant, the State failed to identify any other individuals who are at risk, and he argues that he was not shown to pose a real or significant threat to any person or the community, "especially given his lack of criminal history." The defense posited that if the trial court disagreed regarding defendant being any risk, such risk could be mitigated by electronic monitoring.

¶ 19    The State replied that, based on the evidence, defendant is "not telling the full truth, and that's consciousness of guilt." As to the text messages, the State argued that, given the statements for "all three standing tall and burning your car," "common everyday citizens who have not engaged in criminal activity do not talk like that on text messages, specifically after they saw an individual being murdered three days prior."

¶ 20    The trial court orally ruled that the State had met its burden for pretrial detention. The court stated that it disagreed with the defense that "this is a case of being at the wrong place at the wrong time." Rather, the court believes "this is being at the place before the murder, during

7

the murder, after the murder, consistent with the State's theory of accountability." The court stated that the most significant evidence for the court was that defendant, after allegedly having a gun put to his head, did not call police. The court found it to be more likely that defendant is "not doing the right thing [and calling the police] because he is setting up his drug dealer for whatever reason *** that ends up in his murder." The trial court discussed the evidence about defendant's phone tracking with Lyles' phone during the entire incident and noted that Lyles turned off his phone just before the incident and then turned it back on after—but defendant did not, and defendant's phone remained on the entire time.

¶ 21    Thus, the court ruled:

"It has been proven by clear and convincing evidence that the proof is evident or the presumption great to this Court because of the defendant's presence before, during and after with the people purported to have committed the murder. Defendant's [inaction] is significant to this Court with regard to tipping off the police the two men had just committed a murder."

The court further ruled that:

"the State has proven by clear and convincing evidence defendant poses a real and present threat to the safety of any persons or the community setting up a murder, being involved with it before, during, and after the shooters getting in your car after the murder seeing the murder in front of you, hearing the gunshots is accountable for the murder."

¶ 22    The trial court stated that whether or not this was a circumstantial evidence case, defendant poses a real threat to the safety of people based upon the charge, the fact that there are witnesses, the murder, and defendant's involvement in the murder. The court found that the State

8

met its burden to prove that no condition or combination of conditions could mitigate the threat "based upon *** [s]etting up a murder of your drug dealer." The trial court relied on the presence of eyewitnesses to a murder of someone in the community. The court, therefore, ordered that defendant "shall be detained and remanded to the custody of the Cook County Sheriff pending trial."

¶ 23    On February 2, 2024, defendant filed a notice of appeal from the trial court's order under the Pretrial Fairness Act (PFA) which is made up of the two public acts that amended Article 110 of the Code of Criminal Procedure (725 ILCS 5/110-1 *et seq.*). See P.A. 101-652 and P.A. 102-1104. Illinois Supreme Court Rule 604 allows a defendant to immediately appeal an order denying pretrial release to a defendant. Ill. S. Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023). Defendant asks this court to vacate the order of detention and to release him on pretrial release pending trial.

¶ 24    In the notice of appeal, defendant contends that the State failed to meet its burden of proving, by clear and convincing evidence, that the proof is evident, or the presumption is great, that defendant committed the offense charged. Defendant claims that the State failed to meet its burden for pretrial detention in this case "because the only evidence proffered suggesting [defendant's] involvement is circumstantial and is consistent with [defendant's] statements that he was surprised by the appearance of the shooters and drove them away at gunpoint."

¶ 25    Defendant further contends in his notice of appeal that the State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to a person or the community because "the alleged conduct is circumstantial and does not indicate that [defendant] personally possessed or used any weapons or violence" and the "charges against [defendant] are based on an accountability theory and only allege that he was present at the

9

scene, along with a number of other people, and drove two individuals away from the area after the shooting." Defendant claims that he has "never been convicted of any crime, let alone a crime of violence," and no motive has been identified for the murder that would suggest defendant "is an ongoing danger to any person or the community."

¶ 26    Lastly, defendant contends in his notice of appeal that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions could mitigate the threat to the safety of a person or the community because defendant "has no prior history of violating court orders or violating the rules of electronic monitoring," because defendant "has had the same job for three years" demonstrating positive structure to his life and ties to the community," and because the trial court "improperly used [defendant's] loss of his mother" and "prior period of housing instability to suggest, without any basis, that [defendant] may not have ever had any positive influences in his life, and used this unsupported conclusion to find that no conditions could mitigate any safety threats."

¶ 27    In lieu of filing a memorandum under Supreme Court Rule 604, defendant elected to stand on the notice of appeal. The defense indicates that, after reviewing the full record, it has concluded that defendant's contentions of error are adequately communicated by his notice of appeal and, therefore, defendant will not file a memorandum under the Supreme Court Rules.

¶ 28                                ANALYSIS

¶ 29    This is an appeal from an order granting the State's petition for pretrial detention pursuant to section 110-6.1(a)(1.5) of the Pretrial Fairness Act (725 ILCS 5/110-6.1(a)(1.5) (West 2022) (amended by Public Act 101-652 (eff. Jan. 1, 2023)). Under section 110-6.1(a)(1.5), the State may file a petition to deny a defendant pretrial release, and the circuit court shall conduct a hearing, only if the defendant is charged with an eligible offense under the PFA and it

is alleged that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. 725 ILCS 6/110-6.1(a)(1.5) (West 2022). The State then has the burden to prove, by clear and convincing evidence, the following relevant propositions:

"(1) the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a), and

(2) *** the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, by conduct which may include, but is not limited to, a forcible felony, the obstruction of justice, intimidation, injury, *** and

(3) no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e) (West 2022).

¶ 30                                    STANDARD OF REVIEW

¶ 31    There is a split in the court about the proper standard of review to apply when reviewing a trial court's decision on a petition for pretrial detention. In some decisions, the court has applied an abuse of discretion standard generally to the trial court's decision. See *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. In other decisions members of the court have advanced an opinion that *de novo* review is appropriate. See *People v. Battle*, 2023 IL App (1st) 231838, ¶ 18; *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 67 (Ellis, J., specially concurring). We believe that our review of a decision to grant or deny a detention petition under section 110-6.1 of the Code requires a mixed standard of review. However, in this case, our decision would be

11

the same regardless of what standard of review we applied.

¶ 32 In applying the mixed standard of review that we believe to be appropriate, we must examine the record to determine whether it contains facts to support the trial court's factual determinations by clear and convincing evidence or does not. This court applies the manifest weight of the evidence standard of review in cases involving questions of fact. *People v. Finlaw*, 2023 IL App (4th) 220797, ¶ 55. Because only the first two propositions in an appeal under the Pretrial Fairness Act involve factual findings, we will review those two determinations under the manifest weight of the evidence standard of review. *Saucedo*, 2024 IL App (1st) 232020, ¶ 35. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. [Citation.]" *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12.

¶ 33 As to the third proposition in an appeal under the Pretrial Fairness Act, however, the trial court must exercise a degree of discretion to determine whether any less restrictive means will mitigate the threat a defendant poses to a person or the community. *Saucedo*, 2024 IL App (1st) 232020, ¶ 36. "Courts are 'endowed with considerable discretion' where, as here, they are called upon to weigh and balance a multitude of factors and arrive at a decision that promotes not only 'principles of fundamental fairness' but 'sensible and effective judicial administration.' [Citation.]" *Id.* (citing *People v. Reed*, 2023 IL App (1st) 231834, ¶ 31). Thus, "[o]n the circuit court's determination that there were no conditions of release that could mitigate the safety risk, *** an abuse of discretion standard is most appropriate." *Id.* "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable, or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal citations and quotation marks omitted.) *Id.*

12

¶ 34       DEFENDANT IS CHARGED WITH AN ELIGIBLE OFFENSE

¶ 35    In his notice of appeal, defendant does not challenge the trial court's factual

determination that he is charged with committing an eligible offense. The State charged

defendant with first-degree murder, which is an eligible offense under the Pretrial Fairness Act.

See 725 ILCS 5/110-6.1(a)(1.5) (West 2022) (one of the charged offenses for which a defendant

may be denied pretrial release is first-degree murder).

¶ 36       SUFFICIENT EVIDENCE OF THE OFFENSE CHARGED

¶ 37    Defendant argues that the State failed to produce clear and convincing evidence that the

proof is evident or the presumption great that defendant committed the offense charged.

Defendant argues that the only evidence proffered by the State is circumstantial and supports

defendant's statements that he drove the shooters away at gunpoint.

¶ 38    "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier

of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human

Services*, 2023 IL 127712, ¶ 74. The standard "requires proof greater than a preponderance, but

not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d

347, 362 (2004).

¶ 39    We find that the State introduced sufficient evidence to meet its burden for pretrial

detention. The facts, as they can be discerned from the State's proffer and the other information

in the record, are that defendant arranged by text message to buy cannabis from one of the

eventual witnesses to the murder. Defendant is captured on surveillance video entering the

garage where the victim and two witnesses are located. Just 30 seconds after defendant enters the

garage, two men wearing masks and all black appear outside the garage. When the victim hears a

commotion at the door, he approaches the door, opens it to look outside, and immediately gets

shot in the head. The two men flee, and, quickly thereafter, defendant steps over the victim's dead body and flees too. Defendant initially stated he did not know the shooters. After reviewing the video surveillance, defendant later admitted driving the two men away from the scene, though he says he did so under duress.

¶ 40    Before the shooting, defendant and his cousin's cell phones show they are traveling together. A gas station video from before the shooting shows defendant's cousin wearing all black and being in possession of a mask. Surveillance video from the gas station shows defendant and his cousin together in the same vehicle before the shooting, and that vehicle is the same one defendant drove to meet the witness at the place the victim was killed. At a point before the murder, defendant's cousin's cell phone is turned off, but defendant's phone remains turned on. A while after the murder, defendant's cousin's phone is turned back on, and it is again in the same location as, and moving in sync with, defendant's phone.

¶ 41    A few days after the shooting, defendant sends a text message saying that the "three of them," presumably him and the other two men from the scene of the crime should "stand tall" and not say anything to the police. Then, in another text message, defendant suggests burning the car or changing its license plates. Defendant also decided not to attend a neighborhood party around the time of the murder because he was afraid the police might be there.

¶ 42    When defendant was interviewed by the police, he gave statements that he later had to amend and walk back when presented with the surveillance video evidence. Lying to the police may be considered evidence of consciousness of guilt. *People v. Walker*, 2020 IL App (4th) 180774, ¶ 93. Defendant never called the police to report that he had been in the same room where a murder was committed, and he similarly never called the police to report that he had been forced at gunpoint to drive the two perpetrators of the murder he witnessed away from the

14

murder scene. Defendant could not tell the investigators where he took the perpetrators or give the investigators any kind of information about taking the men away from the scene.

¶ 43    Circumstantial evidence is sufficient to order a defendant detained pending trial because circumstantial evidence is even sufficient to sustain a murder conviction (*People v. Jones*, 105 Ill. 2d 342, 350 (1985)) and the standard for pretrial detention is less than the standard for a conviction (*In re D.T.*, 212 Ill. 2d at 362). The trial court here made specific findings about the sufficiency of the evidence, and none of those findings are against the manifest weight of the evidence. The trial court found that defendant set up the murder by texting the drug dealer and arranging to meet up. The trial court found that defendant was with the shooters before, during, and after the murder and, specifically, drove the shooters from the scene. The trial court disbelieved defendant's version of events—that he drove the shooters away under duress. In its written order, the trial court emphasized that defendant set up a drug deal so that his accomplices could come and murder the dealer. The trial court highlighted defendant's active participation in setting up the whole chain of events and then driving the shooters away from the scene. The trial court found defendant was "willing and actively participating and aiding and abetting a murder."

¶ 44    The State met its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense charged.

¶ 45                    DEFENDANT POSES A THREAT TO SAFETY

¶ 46    Defendant contends the State failed to meet its burden of proving that defendant poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. Defendant contends that his alleged conduct is circumstantial and does not indicate that he personally possessed or used any weapons or violence in this case. Defendant points out that the charges against him are based on an

15

accountability theory and that he has never been convicted of any crime in the past. He argues

that no motive has been identified in the case that would suggest he is an ongoing danger to any

person or the community.

¶ 47    The General Assembly has provided Illinois courts with a non-exhaustive list of factors

to consider when making a determination as to whether a defendant poses a real and present

threat for purposes of denying the defendant pretrial release under sections 110-2 and 110-6.1 of

the Code.

> "The court may, in determining whether the defendant poses a real and present
>
> threat to the safety of any person or persons or the community, based on the
>
> specific articulable facts of the case, consider, but shall not be limited to, evidence
>
> or testimony concerning:
>
> (1) The nature and circumstances of any offense charged, including whether the
>
> offense is a crime of violence, involving a weapon, or a sex offense.
>
> (2) The history and characteristics of the defendant including:
>
> (A) Any evidence of the defendant's prior criminal history indicative of violent,
>
> abusive or assaultive behavior, or lack of such behavior. Such evidence may
>
> include testimony or documents received in juvenile proceedings, criminal, quasi-
>
> criminal, civil commitment, domestic relations, or other proceedings.
>
> (B) Any evidence of the defendant's psychological, psychiatric or other similar
>
> social history which tends to indicate a violent, abusive, or assaultive nature, or
>
> lack of any such history.
>
> (3) The identity of any person or persons to whose safety the defendant is
>
> believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of sentence for an offense under federal or state law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g) (West 2022).

¶ 48   The trial court made specific findings regarding why defendant posed a threat to the safety of others and the community, none of which are against the manifest weight of the evidence. Beginning with the nature and circumstances of the crime and defendant's involvement, the trial court found that defendant set up the murder by texting the drug dealer and arranging to meet up. It was a crime of violence that included the use of a firearm. The trial court found that defendant was with the shooters before, during, and after the murder and, specifically, drove the shooters from the scene. The trial court disbelieved defendant's version of events—that he drove the shooters away under duress.

¶ 49   In its written order, the trial court emphasized that defendant set up a drug deal so that his

17

accomplices could come and murder the dealer. The trial court highlighted defendant's active participation in the murder, noting that he set up the whole chain of events and then drove the shooters away from the scene. The trial court found defendant was "willing and actively participating and aiding and abetting a murder."

¶ 50    The State produced evidence that defendant had a pending domestic violence charge against him, albeit a misdemeanor. In discussing the safety of persons, the trial court highlighted that there were two eyewitnesses to the murder. Defendant knows those witnesses and was texting with one of them just before the murder. In its written order, the trial court explained that the "witnesses are in danger" after "this execution style killing that [defendant] played a role in and the community is at risk as well."

¶ 51    Defendant made statements through his text messages and during interviews with police. He urged his co-offenders not to cooperate with the police and suggested destroying evidence by burning the vehicle or changing its license plates. Defendant gave conflicting statements to investigators, statements that the State urged to be considered as consciousness of guilt. Even though defendant attempts to downplay his alleged role, the trial court found him to be instrumental in the murder for setting it in motion and then helping the shooters to escape. We find there to be clear and convincing evidence that defendant poses a real and present threat to the safety of persons and the community.

¶ 52              NO CONDITIONS WILL MITIGATE THE THREAT

¶ 53    Defendant contends that the State failed to meet its burden of proving that no conditions could mitigate the real and present threat to the safety of any person, persons, or the community. Defendant argues that he has no prior history of violating court orders. Defendant also argues that he has had the same job for three years, demonstrating positive structure to his life and ties

18

to the community.

¶ 54　Once the trial court finds that the State proved a valid threat to the safety of any person or the community by clear and convincing evidence, the trial court must determine which pretrial release conditions, if any, will reasonably ensure the safety of others and the likelihood of compliance by the defendant with all the conditions of pretrial release. *People v. Lee*, 2024 IL App (1st) 232137, ¶ 31 (citing 725 ILCS 5/110-5(a) (West 2022)). Section 110-5(a) lists several considerations the trial court must take into account when determining whether conditions of pretrial release might be effective in protecting the safety of others and the community. See 725 ILCS 5/110-5(a)(1-7) (West 2022). Some of the applicable considerations here are the nature and circumstances of the offense charged, the weight of the evidence against defendant, the defendant having pending charges for another case, the nature and seriousness of the real and present threat to the safety of any persons or the community that would be posed by defendant's release, and the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. 725 ILCS 5/110-5(a)(1-5) (West 2022).

¶ 55　Here, the nature and circumstances of the offense charged are disturbing. The murder was carried out in what the trial judge described as an execution-style killing. It was a crime of violence committed with a firearm. The weight of the evidence against defendant is strong, as set forth more fully above. Evidence was introduced at the detention hearing that defendant had a pending charge against him for misdemeanor domestic violence, and that the State had recovered text messages from defendant where he was discussing plans to commit robberies. The trial court highlighted the nature and seriousness of the threat to the safety of the eyewitnesses based on the brutality of the murder in this case and the fact that defendant knows the witnesses. The trial

court also discussed the nature of the threat to the community based on defendant orchestrating and setting up the victim to be killed in such a fashion. Finally, there was evidence that defendant had discussed destroying evidence and had instructed others not to cooperate with the police.

¶ 56 An abuse of discretion occurs only when the circuit court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. *People v. Colon*, 2018 IL App (1st) 160120, ¶ 12. When we review the circuit court's evaluation of evidence for an abuse of discretion, we will not substitute our own judgment for the trier of fact. *Inman*, 2023 IL App (4th) 230864, ¶ 11. There is at least some evidence on all of the five considerations that are applicable to a case of this type. We cannot say that no reasonable person would agree with the trial court's decision, therefore we find that the trial court did not abuse its discretion when it determined that no conditions could mitigate the threat defendant poses to others or the community.

¶ 57                             CONCLUSION

¶ 58 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 59 Affirmed.

¶ 60 Ellis, J., specially concurring.

¶ 61 I concur in the judgment but would apply *de novo* review, for the reasons given in *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 65-123 (Ellis, J., specially concurring) and *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 79-138 (Ellis, J., specially concurring).

¶ 62