2024 IL App (1st) 240499-U

SECOND DIVISION
May 14, 2024

No. 1-24-0499B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 MC 1100714 |
| | ) | |
| KOMARION KIMBER, | ) | Honorable |
| | ) | Charles Beach, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Affirming the trial court's order denying pretrial release where the State met its burden of showing by clear and convincing evidence that defendant committed the offense of first-degree murder.

¶ 2    Defendant, Komarion Kimber, appeals the trial court's order denying pretrial release. In this appeal, he contends that the State failed to meet its burden of showing by clear and convincing evidence that he committed the offense of first-degree murder.

¶ 3    The record shows that defendant was charged with first-degree murder in a February 22, 2024 felony complaint. The complaint generally alleged that on or about November 11, 2023,

defendant shot the victim, Leon Mooney, causing his death. Also on February 22, 2024, the State filed a petition for a pretrial detention hearing, asserting that the proof was evident or presumption great that defendant committed the detainable offense of first-degree murder, that he posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate that risk.

¶ 4      The trial court held a hearing that same day. At the hearing, the State proffered that on November 11, 2023, at approximately 2:30 p.m., the victim and three friends met with defendant and defendant's brother in an apartment at Altgeld Gardens to trade AR rifles for handguns. The victim and one of his friends each had an AR rifle in a backpack, and another friend had a handgun.

¶ 5      While in the apartment living room, defendant took out a handgun and showed it to the victim and his friends. The defendant's brother also had a gun in his waistband. The victim and his friend both opened their backpacks and took out the AR rifles that they had with them, and the other friend took out the handgun. Defendant asked to see the two AR rifles, so the victim and his friend gave them to him. Defendant then asked to see the other friend's handgun, and the friend gave that gun to the defendant. At that point, defendant was in possession of four guns, his brother was in possession of one, and the victim and his friends were unarmed. Defendant then announced to the victim and his friends that their guns "just got took [*sic*]."

¶ 6      At that point, the victim, who was several feet away from defendant and the guns, got up from the couch and moved in the direction of the defendant. Defendant shot him twice, causing the victim to fall to the floor. Everyone fled the residence. Once they were outside, one of the victim's friends called 9-1-1 and reported the shooting. The defendant and his brother fled the scene.

¶ 7    When the police arrived, they observed the defendant running through Altgeld Gardens. The police chased and detained him. In footage captured by body worn camera, defendant gave a fake name and his real date of birth, before police released him.

¶ 8    Before police arrived at the scene, the victim's body was moved outside the residence and placed in a grassy area outside the front door of the apartment. The victim was taken to a hospital where he was pronounced dead. The victim suffered two gunshot wounds—one to the chest, and one to the right arm.

¶ 9    When police searched the scene, they recovered one .45 caliber shell casing inside the residence. Officers later located two AR rifles inside a nearby dumpster, which were believed to be the AR rifles the victim and his friend brought to the residence. Police also recovered a phone which had been dropped by one of the victim's friends when fleeing the apartment. A search warrant was executed, and a forensic examination was conducted. In that phone, police saw a series of text messages in which the friend arranged with a contact to meet up and exchange guns.

¶ 10    Two friends of the victim who were at the apartment identified defendant in separate photo arrays, and in a still photograph taken from the body worn camera footage when defendant was stopped by police on the day of the incident.

¶ 11    Police investigation also revealed that the person who rents the apartment where the incident occurred knows defendant through her son and allows defendant to come and hang out in the house. That person was asleep in a bedroom at the time of the incident and did not witness the events. She did, however, inform police that she saw defendant in the apartment earlier in the day and outside of the apartment after the shooting.

¶ 12    The State also informed the court regarding defendant's criminal background, including a pending aggravated robbery, and two 2022 juvenile adjudications for "cannabis" and aggravated

battery. Defendant was on electronic monitoring which was revoked on June 15, 2023, and a warrant was issued for his arrest on July 14, 2023.

¶ 13    The court then asked the defense to respond. Defense counsel asked the court to deny the petition to detain. Counsel argued that the witnesses did not make statements to the police at the scene, but instead, they spoke to police approximately two months later, after they "came up with an explanation that did not involve them being guilty in any way." Defendant was not found with the murder weapon, nor was any gunshot residue found on him. Counsel argued that the State's version of events, under which defendant was able to "commandeer[ ] all five of those guns" and perform a "stick up," was not believable. Finally, defense counsel suggested that even if statements made by the witnesses were true, they "suggest that an affirmative defense of self-defense could be possible." Accordingly, counsel asserted that "the proof is not evident, nor is the presumption great that [defendant] is guilty of this offense."

¶ 14    In reply, the State acknowledged that the friends did not say anything to police initially, however,

> "we also have to understand that these are people in their young 20s or teenagers, who were engaged in a dangerous illegal activity with assault rifles. And then once in the apartment, they watched their friend get murdered in front of their face. They got out of there. They did. And then they talked to the police and told them what happened later. And we know that is true because of the text messages, because of the shots, because of the AR-15s being in a garbage can, and because the defendant is running through Altgeld Gardens after.

And regarding *** self-defense, whether or not the victim went for a gun, everyone is very consistent: They had no guns. So he didn't even have time to get near a gun because he is shot twice and killed. There is absolutely no self-defense here."

¶ 15    The trial court then explained to defendant that the State was requesting that the court order that he remain in custody while the case was pending, and, in order for the State

"to be successful in that request, they must establish three things by clear and convincing evidence. First, they must establish that the proof is evident, the presumption is great that you committed the offense that you're charged with. The second thing they need to establish is that you pose a real and present threat to any person, persons, or the community. And then the third thing they must establish is that there are no conditions or combination of conditions that would mitigate or lessen that real and present threat. If they're successful on all three of those points, then you remain in custody while this case pends for trial. If they fail on any one of those points, well, then you would be released, but released with conditions."

¶ 16    The court first found that the State established by clear and convincing evidence that the proof is evident and presumption is great that defendant committed the offense of first-degree murder. The court explained that defendant was "positively identified by two witnesses in a photo array." The court "underst[oo]d [defense] counsel's argument regarding the late breaking identification approximately two months after the fact of this event," but found that the delay did not "lessen that identification" because "the nature of the offense [and] the fact that [the witnesses] too were involved in an illegal act, *** might make them reticent or reluctant to admit to being present and how things unfolded. But nevertheless, that positive identification by those two witnesses does hold sway."

5

¶ 17   The court also explained that the evidence also showed defendant fleeing near the scene after the murder, that he gave a fake name when detained by the police, and that the witnesses also identified defendant in stills from body worn camera footage.  The court concluded,

> "when we tie all these things together, the flight, the fake name, the positive identification of the body worn camera stills, the positive identification and photo array. The renter of the apartment said that *** you were there on the day of *** the shooting in that apartment. Combined with the fact that the purpose of you all being in that one location at one time is the trade of weapons, specifically AR Rifles and handguns, and those ARs oddly being recovered somewhere near the vicinity. All these factors tied together meet the burden of clear and convincing evidence that the proof is evident and presumption is great."

¶ 18   The court then turned to the question of whether defendant was a real and present threat to any person, persons, or the community. The court stated that it found it "difficult" and "heartbreaking" to have to describe the 17-year-old defendant as a danger. However, the proffered facts included that defendant illegally possessed handguns, and was making arrangements to trade them for AR rifles—weapons that are "capable of inflicting even greater damage, even greater pain on our community." The court also noted that defendant's criminal background indicated that he was not "reluctant to commit" crimes of violence. Defendant "spent time in custody on an aggravated battery in the Juvenile Detention Center" and he had a pending robbery charge at the time of this offense. The court thus concluded that, in light of defendant's

> "prior history along with what [defendant] w[as] attempting to do on that date, and the fact that [defendant] discharged a weapon at another human being and killed

6

them, tells me that [defendant] pose[s] a real and present threat to the safety of the community, as much as that pains me to say about a young man."

¶ 19 Finally, the court found no conditions or combination of conditions that could mitigate the threat. The court explained that if it allowed defendant to be released on electronic monitoring, he would still have the "ability to *** go out and purchase weapons or obtain weapons." Additionally, defendant had been on electronic monitoring previously, but it had been revoked. At the time of the murder, defendant "had a warrant out for [his] arrest for a robbery." The court also noted that defendant had "stopped going to court on" the charge, and his electronic monitoring had been revoked, which made the court believe that defendant would not "follow lawful orders from the Court" or "appear in court when *** required." Accordingly, the court found there were no conditions or combination of conditions that would mitigate the threat posed by defendant, and ordered him to be detained.

¶ 20 That same day, the court entered a written order to detain defendant consistent with the extensive findings above.

¶ 21 Defendant filed a timely notice of appeal on March 6, 2024, requesting the reversal of the trial court's order denying pretrial release. Utilizing the form approved for Rule 604(h) appeals by defendants, defense counsel checked one box, asserting that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged."

¶ 22 Counsel expanded on defendant's challenge in a document labelled, "Grounds for Relief." Counsel argued that the State failed to meet its burden because there was no "video or audio surveillance captur[ing] the shooting or *** any forensic evidence link[ing] [defendant] to the crime," and the murder weapon was not recovered. Counsel also contended that no witnesses

"made statements to police at the scene after the shooting"—one of the victim's friends initially told police that he "didn't see anything," and only spoke to officers three hours later, while the other friend did not give a statement until more than two months later. Defense counsel alleged that the delay allowed the witnesses an opportunity "to agree on [a] peculiar," "self-serving" and "bizarre narrative of events," which "require[d] a fact finder to believe that [the] 17-year-old [defendant] somehow took control of two assault rifles and a handgun (in addition to another handgun he allegedly possessed) prior to the shooting." Accordingly, counsel argued that the witnesses' statements were "not sufficiently credible to meet the State's burden of proving by clear and convincing evidence that the proof is evident or the presumption is great that [defendant] killed the decedent without lawful justification."

¶ 23    The appeal is brought pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023). This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023).

¶ 24    The Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). For qualifying offenses, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence (1) that the proof is evident or the presumption great that the defendant has committed a qualifying offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), (2) that the defendant's pretrial release poses a real and present

threat to the safety of any person or persons or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and (3) that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (725 ILCS 5/110-6.1(e)(3) (West 2022)).

¶ 25 Pursuant to Illinois Supreme Court Rule 604(h)(2), the "appellant may file, but is not required to file, a memorandum not exceeding 4500 words, within 21 days of filing of the Rule 328 supporting record." Ill. Sup. Ct. R. 604(h)(2). In this case, defendant chose not to file a Rule 604(h) memorandum. Instead, defendant filed a "Notice *** in Lieu of Rule 604(h) Memorandum," informing this court that defendant has elected to stand on the notice of appeal and the attached document entitled "Grounds for Relief."

¶ 26 The sole claim raised in defendant's notice of appeal is that "[t]he State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged," first degree murder. Specifically, he contends that the State failed to sufficiently prove that defendant committed the offense charged because its proffer did not include "video or audio surveillance" of the shooting, forensic evidence linking defendant to the murder, or the murder weapon. Defendant also contends that the witness statements on which the State based their proffer "are not sufficiently credible" because they are "self–serving," present "a bizarre narrative of events," and are "otherwise lack[ing] indicia of reliability."

¶ 27 The applicable standard of review in a pre-trial detention appeal has been the source of considerable disagreement in the Illinois appellate courts. Some appellate decisions have concluded that all aspects of detention hearings under the Act are subject to abuse of discretion

9

(see *People v. Whitmore*, 2023 IL App (1st) 231807, ¶¶ 18-19; *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11) while others have exclusively utilized the manifest weight of the evidence standard (see *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12; *People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 8). Other courts have adopted a mixed approach, under which the circuit court's determinations that the State has proved by "clear and convincing evidence" that the defendant committed a qualifying offense, and that he is dangerous, is reviewed for the manifest weight of the evidence, while the ultimate decision regarding detention, or the imposition of conditions of release are subject to abuse of discretion review. See *People v. Parker*, 2024 IL App (1st) 232164, ¶ 50; *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-36; *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 8; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10; *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Reed*, 2023 IL App (1st) 231834, ¶ 24, 31. Still others have concluded that appeals under the Act should be reviewed *de novo.* See *People v. Battle*, 2023 IL App (1st) 231838, ¶ 18; *Saucedo*, 2024 IL App (1st) 232020 (Ellis, J., specially concurring).

¶ 28    We agree with those cases which have applied a mixed approach, and believe that the circuit court's determination that the State has proved by "clear and convincing evidence" that the defendant committed a qualifying offense, should be reviewed for the manifest weight of the evidence. See *Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-36; *Parker*, 2024 IL App (1st) 232164, ¶ 50. Nonetheless, we would affirm the circuit court's judgment under any standard for the following reasons.

¶ 29    Initially, we note that, at this stage, the State does not need to prove defendant's guilt beyond a reasonable doubt. *Stock*, 2023 IL App (1st) 231753, ¶ 13. Instead, the State need only show that the proof is evident or the presumption great that the defendant has committed a qualifying offense "by clear and convincing evidence" (725 ILCS 5/110-6.1(e)(1) (West 2022)),

and such a showing may be made by proffer "based upon reliable information" (725 ILCS 5/110-6.1 (f)(2) (West 2022)). The clear and convincing standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004).

¶ 30    In this case, the State's proffer established that eyewitnesses would testify to a consistent version of events in which the victim and those witnesses went to an apartment to engage in an illegal gun transaction with defendant. During that exchange, defendant deceived them into turning over those guns, and then shot the victim twice. The witnesses later identified defendant as the shooter in photo arrays and still photographs, and their statements were corroborated by text messages confirming the plan to exchange weapons. The record also shows that defendant was seen by another witness at the apartment on the day of the incident, and he fled after the shooting, giving police a fake name when apprehended. Police recovered one .45 caliber shell casing inside the residence, and located two AR rifles in a nearby dumpster. Based on the record in this case, the trial court reasonably found that the State's proffer established by clear and convincing evidence that the proof is evident or the presumption great that the defendant committed the charged offense of first-degree murder.

¶ 31    Although defendant complains that there was no video or audio surveillance of the incident, no forensic evidence, and the murder weapon was not recovered, such evidence is not required, even under the more rigorous standard of proof beyond a reasonable doubt. See *People v. Williams*, 182 Ill. 2d 171, 192 (1998) ("Proof of physical evidence connecting a defendant to a crime has never been required to establish guilt."); *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) ("the testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant."). And while defendant argues that the court should not have

believed the witnesses' accounts due to their allegedly "bizarre" nature and their delay in speaking to police, the record shows no evidence, other than defendant's mere speculation, which would dispute the witnesses' version of events. Moreover, the record shows that one of the witnesses spoke to police a mere three hours after the shooting, which can hardly be argued to be so extreme that it would bear negatively on the witness's credibility. In these circumstances, we find no basis to conclude that those accounts are inherently unreliable or incredible.

¶ 32    For the foregoing reasons, we find no error in the trial court's conclusion that the State met its burden of showing clear and convincing evidence that defendant committed the offense of first-degree murder, and we affirm the judgment of the circuit court of Cook County.

¶ 33    Affirmed.